## GEORGE LYONS v. THE STATE.

*No. 3256.   Decided February 13.*

1. **Conspiracy, Liability of Parties to a.**—If two or more persons agree to commit an offense, and from the nature of such offense and from the nature of such conspiracy it is reasonably probable that death would result to the victim, and death does result, though not intended, still all would be responsible for the homicide; but death not resulting, the parties would be held responsible for the actual results.

2. **Same — Liability of One Present Aiding by Acts or Encouraging by Words or Gestures.**—Where there is no conspiracy to commit an offense, still if an offense be committed by one and the accused was present and knew the intention of the other, and aids by acts or encourages by words or gestures the person engaged in the commission of the offense, he would be guilty of the offense committed. But he would be guilty only to the extent of his knowledge, or for the natural and reasonable consequences of the acts aided or encouraged by him.

3. **Fact Case.** — See opinion for a statement of facts held wholly insufficient to sustain a verdict and judgment for an assault with intent to murder.

APPEAL from the District Court of Bell.   Tried below before Hon. W. A. Blackburn.

This appeal is from a judgment of conviction for assault with intent to murder, the punishment being assessed at two years in the penitentiary. It is unnecessary to give a detailed statement of the facts, further than they are contained in the testimony of George Lyons in his own behalf, who testified as follows: "I am the defendant in this cause;

am a fireman on the railway. On the morning of the trouble testified to by the State's witnesses I was walking up Tenth Street, in Temple, with Sam Thornburn. Sam was drunk, and I was taking him to our boarding house. As we went up the sidewalk on the west side of the street, old man Scott was standing on the sidewalk near his corn popper. I was holding Thornburn by the arm as we walked, and as we got about opposite old man Scott, Thornburn staggered over a rise in the sidewalk, and that threw me against the old man. We did not stop at once, but the old man got hot and followed us up the sidewalk a few feet about the upper side of the shooting gallery. Thornburn said something to him that I did not understand, and the old man seemed to get madder. I then told him not to mind what Thornburn said; that he was drunk. The old man then ran into the gun stand and picked up a gun, and came back with it presented toward Thornburn. He came out on the sidewalk and poked the muzzle of the gun right up to Thornburn, who caught the gun with both hands and wrenched it out of the old man's hands. About this time Clarence Scott ran by to the gun stand, picked up a gun, and worked it as if loading it. I jumped at him and caught the gun and held it until several parties came up, and the row stopped. I took Thornburn and carried him on to the boarding house, where we were both arrested shortly afterward by the officers. When Thornburn caught hold of the gun he seemed to raise the old man up in wrenching it from him, and when Mr. Scott's hold on the gun broke loose he fell on the edge of the sidewalk, and that was the last I saw of the scuffle between them, as my back was turned to them while I was catching and holding Clarence Scott's gun, and when I looked around several parties had come up and got the gun from Thornburn, and Mr. Scott had got up off the sidewalk. I never struck Mr. Scott with my fist or with the gun, and never touched him, except when I pushed against him. Thornburn never touched him until after he took the gun away from him. I never tried to strike Clarence Scott, and didn't try to take the gun away from him. I only held the gun to keep him from shooting. I had no intention of hurting old man Scott and had no idea Thornburn would do more than take the gun away from him.

"Cross-examined: I am a railway man. I had got in from my run about 2 o'clock, and had been in town with the boys from that time till the trouble came up. Thornburn was drunk, but I was not. I had been in no rows before that. I had taken four drinks between 2 o'clock and the time of the trouble; but I was sober and tried to keep down trouble at the time of the difficulty. I apologized to old man Scott for running against him, and told him not to mind what Thornburn said, because he was drunk. Thornburn staggered over a rise in the sidewalk and threw me against the old man."

*Saunders & Durrett* filed an able brief for appellant in this case.

*R. H. Harrison*, Assistant Attorney-General, for the State.

HURT, JUDGE.—This is a conviction for an assault with intent to murder, with two years confinement in the penitentiary as the punishment. But two questions are presented in the very elaborate brief and argument for appellant: (1) The sufficiency of the evidence to sustain the verdict. (2) Was there error in the charge of the court?

We have carefully examined the charge, and when it is considered with reference to the facts, we believe it to be without error.

Does the evidence support the verdict? We think not. When the statement of facts is examined, the conclusion is inevitable that old man Scott was mistaken when he states that defendant struck him with the gun. That Thornburn, and not defendant, struck him with the gun can not be questioned. The mistake is quite reasonable. The old man was over 71 years old, was in very bad health, and had been for some time. He had never seen either of the parties before the difficulty. That Thornburn struck him, if struck at all, is conclusively proved. It is also equally evident—absolutely true, if evidence can establish any fact—that when Thornburn struck old man Scott, defendant Lyons was engaged in preventing Clarence Scott from using his gun. Under such a state of case, in the absence of any agreement or conspiracy to kill old man Scott, could Lyons be held responsible for the intent to kill and murder, if Thornburn entertained such intent? He certainly could not. Was there an agreement to kill Mr. Scott? There was not. The evidence not only fails to show such agreement, but most clearly shows the contrary. Did Thornburn intend to kill Mr. Scott? This is doubtful. But concede that he did, did Lyons know of the intent? There is not the slightest circumstance tending to show such knowledge. This was a sudden affray, harmless in its inception, and so rapid in its consummation as to preclude all possibility that it was preconcerted.

If two or more persons agree to commit an offense, and from the nature of such offense and the manner of executing such conspiracy it is reasonably probable that death would result to the victim, and death does result, though not intended, still all would be responsible for the homicide; but death not resulting, the parties would be held responsible for the actual results—in this case for aggravated assault and battery. This proposition assumes a conspiracy to commit an offense. If there be no conspiracy or agreement, the above conclusion would not follow. Each would be held responsible for his own acts. But though there was no conspiracy to commit an offense, still if one commits an offense, and the accused was present and knew the intention of the other, and aids by acts or encourages by words or gestures the person

engaged in the commission of the offense, he would be guilty of the offense committed. But he would be guilty only to the extent of his knowledge, or for the natural and reasonable consequences of the acts aided or encouraged by him.

In this case a serious bodily injury was inflicted upon Scott. If defendant knew that Thornburn was engaged in the infliction of this injury, and aided and encouraged him in the commission thereof, he would be responsible for the natural and reasonable consequences, and if death had ensued would be guilty of the homicide; but if Thornburn intended to kill Scott, but this intention was not known to defendant, death not resulting, but serious bodily injury, the latter would be responsible, not for the secret intention of Thornburn, but for the reasonable consequences, viz., the infliction of serious bodily injury, and hence his crime would be aggravated assault and battery.

Does the proof show with reasonable certainty that defendant knew that Thornburn intended to kill Scott? It does not. Does it show that he saw Thornburn when he struck Scott with the gun? This is doubtful. Conceding that he did see Thornburn strike, or in the act of striking, is there any evidence that he aided or encouraged him to strike Scott with the gun? There is none, for the evidence renders it certain that at the time defendant was struggling with Clarence Scott to prevent him from using a gun. We agree with counsel for appellant, that the evidence is insufficient to sustain the verdict for assault with intent to murder.

*Reversed and remanded.*

Judges all present and concurring.