## Wells v. Commonwealth.

(Decided May 22, 1925.)

### Appeal from Leslie Circuit Court.

1.  Homicide—Declaration of Deceased After Fatal Injury, Preceded by Statements Showing Hope of Recovery, Properly Excluded.— In prosecution for manslaughter, declarations of deceased were not admissible as dying declarations when preceded by statement that he believed he would pull through, although at same time he

said he had but little hope, as dying declarations must be made in extremis after all hope of recovery has been abandoned.

2. Homicide—Admissibility of Dying Declarations Not Affected by Hope of Recovery at Some Time Other than when Declaration Made.—In prosecution for manslaughter, dying declarations, made under belief of impending death, held not incompetent because deceased at one time, after fatal injury, expressed hope of recovery; competentcy being measured by condition of mind at time of declaration, and not by belief before or after declaration.

L. D. LEWIS and J. M. BAKER for apellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellant, Matt Wells, upon his trial in the Leslie circuit court under an indictment charging him with murdering Tim Lewis, was convicted of voluntary manslaughter and his punishment fixed at five years' confinement in the penitentiary. On this appeal from the judgment pronounced on the verdict after his motion for a new trial was overruled he urges, through his counsel, but one ground for a reversal of the judgment which is: That the court erred in admitting proof of a dying declaration of the deceased.

The killing occurred in the dwelling of Ray Lewis on Wolf creek, in Leslie county, one Wednesday night at about nine o'clock, and which was evidently the result of a combination of two of the greatest enemies of the peace and welfare of society, to-wit, an abundant supply of pistols and a like ample supply of moonshine liquor. The crowd that was gathered in the one-room mountain home of Ray Lewis consisted of himself, his wife and two small children; Tim Lewis, the deceased, and his wife and two small children; the defendant and one Callahan, all of whom were armed except the women and children, and perhaps Callahan, and it is proven that the defendant and Ray Lewis had freely imbibed of the "moonshine." Those two got into a scuffle in which they both became angry and it turned into a fist fight in which both of them received bruises and bloody noses. Efforts were made, at least by defendant, to draw his pistol at that time, but the deceased took it away from him, and he was either persuaded to or voluntarily left the house. He was gone, according to the proof, between ten and thirty minutes, and when he first left he was followed by Ray

Lewis, who carried with him a shotgun, but nothing resulted from that, and the latter returned to the house and stated to the members of the crowd that he wished to make friends with defendant and requested that someone find him and bring him back into the house. Deceased agreed to bring about the reconciliation in that manner and found defendant on the outside near to or at a stable across the creek and persuaded him to return to the house, but the latter would not agree to do so until deceased returned to him his pistol, which was done, and the two returned to the house.

The testimony differs very widely as to what occurred when deceased and defendant came back into the house. The testimony of Ray Lewis, the widow of the deceased, Tim Lewis, and the dying declaration of the deceased was to the effect that defendant immediately upon entering the house spoke to Ray Lewis and said, "By G— do you think that you can run me like you have," and at the same time drew his pistol and fired two shots at Ray Lewis, hitting him with at least one of them, and then immediately turned and shot the deceased, from the effects of which he died on the following Friday morning. They also testified that the deceased, who was on the opposite side of defendant from Ray Lewis, neither drew nor fired a pistol, but one of the witnesses said that he had a pistol under his sweater and was trying to get it out. The wife of Ray Lewis, Callahan and defendant testified that immediately upon the return of Tim Lewis and defendant to the house, Ray Lewis grabbed a shotgun that was lying upon the bed and shot at defendant at a distance of only three or four feet, but missed him, and that defendant then drew his pistol and fired some shots at Ray Lewis, and while he was doing so the deceased also fired at him when defendant turned and shot him, from the effects of which he died.

Callahan was contradicted by three witnesses, who testified to statements he made the next day, directly at variance with his testimony, and fully corroborating the testimony of the witnesses for the Commonwealth. So that, the case was pre-eminently one for determination by the jury and there is no complaint of the instructions, which brings us to a consideration of the only question urged against the propriety of the judgment.

Some four witnesses testified to the dying declaration of the deceased, and as to the precise time it was made to the respective witnesses between the shooting

and the death is somewhat clouded, but evidently some of them were made near the latter part of that period, for the mother of deceased, as well as his wife, testified to hearing him narrate the facts more than once and that on every occasion he said "that he was killed" and made preparation for death by having himself baptised. At least one witness testified that deceased said before makding the statement (but how long before does not appear) that he believed "he would pull through," although he stated in substance at the same time that he entertained but little hope for such a result. The court excluded the testimony of that witness and we think properly so, since the foundation for the admission of dying declarations is that they must be made *in extremis* after all hope of recovery has been abandoned; for until then the law's substitute for an oath has not arisen, and which substitute is, that the declarant must be facing the Eternal Beyond when he is presumed to be impressed with the solemn duty of telling the truth. That rule is so fundamental and so universally acknowledged as to require the citation of no cases or other authorities in support of it. The record does not disclose any such impairing fact as to the declarations proven by the other witnesses. On the contrary, they make out a clear case, bringing them within the rule stated and which is fortified by the fact that the deceased acting under the belief of impending dissolution prepared for and received baptism, indicating that he visualized the situation and realized that death was impending and which is a relevant fact in such investigations as was held by us in the case of Ulrich v. Commonwealth, 181 Ky. 519.

The declarant may, at some period intervening between receiving his wound and his death, entertain hopes of eventual recovery so as to render a declaration made by him at that time incompetent, but it does not necessarily follow that a later declaration made when that hope was abandoned by him should also be incompetent, since its competency must be measured by the condition of mind of the declarant at the time of his making the declaration. Hence, we have held that a dying declaration "made under consciousness of impending death is not rendered incompetent by subsequent expressions of a hope of recovery." Calico v. Commonwealth, 206 Ky. 271; Griffin v. Commonwealth, 204 Ky. 790; Jackson v. Commonwealth, 188 Ky. 583, and Allen v. Common-

wealth, 168 Ky. 325. It is, therefore, clear that the hope expressed by the deceased at the time of the making of the declaration that was excluded, cannot affect the competency of his later declarations made at a time when no such hope was entertained, according to the evidence of the witnesses who testified concerning them.

It appearing that the only error relied on is insufficient to authorize a reversal, and there being no other found in the record, it follows that the judgment should be and it is affirmed.