## Charles Lyons and Doll Lyons v. Commonwealth.

(Decided October 22, 1926.)

### Appeal from McCreary Circuit Court.

1. Homicide.—In prosecution for homicide, question as to how killing occurred held for jury.

2. Homicide.—Testimony that defendant shot deceased in back while he was constructing a fence held to sustain conviction for manslaughter.

3. Homicide.—Admissibility of dying declaration is not affected by expressions of belief by deceased made before or after dying statement to effect that he expects to get well.

4. Homicide—Dying Declaration, if Made at Time When Deceased Believes he is Facing Impending Death, is Competent.—Admissibility of dying declaration depends on state of deceased's mind at time statement is made, and if he then believes he is facing impending death, the statement is competent.

5. Homicide.—If defendant did not fire at deceased until shooting between deceased and codefendant had ceased, he did not aid and abet homicide.

6. Criminal Law.—An abettor must aid in commission of crime either at time or before its commission, and cannot become such after crime is complete.

7. Homicide.—Under conflicting evidence that defendant fired after difficulty between deceased and codefendant had ceased, it was prejudicial error not to instruct that defendant, whose shot wounded but did not kill deceased, to be guilty of aiding in homicide, must have fired during the difficulty between the others, otherwise he could only be guilty of shooting and wounding with intent to kill, under Kentucky Statutes, section 1166, or of shooting and wounding in sudden heat of passion, under section 1242.

8. Homicide.—Offenses of shooting with intent to kill, under Kentucky Statutes, section 1166, and shooting in heat of passion, under section 1242, are included in charge of murder, and should be instructed upon when evidence authorizes it.

DUNCAN & BELL for appellants.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming as to Charles Lyons and reversing as to Doll Lyons.

Appellants are brothers, and the younger (Doll) was unmarried and lived with his brother and his family in McCreary county. Near them and adjoining their home

lived a family named Heath, among whom was a young son, Silas.

Prior to the occurrences hereinafter dealt with, there was ill feeling between the men in the two families growing out of the contemplated erection of a new fence by the Heaths in such way as to interfere with a passway over the Heath land used by appellants, and possibly out of some other things. At the time of the homicide involved Silas Heath and two others were engaged in setting posts for this new fence, and a number of the posts had already been set.

The spring from which the Lyons family got its supply of water had been polluted by some one, and they were then getting their supply from the well or spring of a neighbor. When, therefore, it became necessary for Charles Lyons to go to the neighbor's home for water he started from his own home with two water buckets in his hand. He knew where Silas Heath and the others were at work on the new fence, and the route which he selected to the neighbor's house as he thought would take him some distance from where the others were at work. But at the time he reached the line of fence on the ridge Silas Heath had changed his position from lower down on that line and met him or came in contact with him on the ridge. A short time before appellant Charles Lyons had shot his pistol either at a snake or dog, and when the two met on the ridge inquiry was made by Silas Heath of Charles Lyons what he had shot at, and this inquiry led to a conversation and then to the shooting between them. There had been on both sides threats, and these threats had been communicated; and although there is sharp contradiction in the evidence as to who was the immediate aggressor at the time, the result as between the two men was that Silas Heath was shot twice, once in the back, which resulted in his death a few hours later, and once in the arm, while Charles Lyons had a pistol ball through his trousers.

Charles Lyons left his brother Doll at his home some thirty or forty yards from the scene of the difficulty; Doll was seated either on the porch or in an automobile in the yard near the porch. He saw the difficulty between his brother and Heath, and immediately went into the house, secured a double-barrel shot gun and came out and after going a short distance toward the combatants fired one or two shots from the shotgun at Heath, but the evidence

shows he struck him only with one shot either in the hand or wrist, which wound did not contribute to his death. It is reasonably clear from the evidence that at the time Doll fired from the shotgun Heath had already received his death wound, and the evidence is conflicting as to whether at the time Doll first fired the shooting between the other two had ceased, some of the witnesses saying the shooting between the other two had then wholly ceased, and others saying that firing was still going on between the two original combatants.

The indictment charges the defendants jointly with the homicide; charges in another count a conspiracy, and in a third count charges that Charles had done the killing and that Doll was present aiding and abetting at the time. There being no evidence of a conspiracy the circuit court did not instruct on that charge, but did authorize the conviction of Charles for the actual killing and Doll for aiding and abetting. The verdict found them each guilty, Charles of manslaughter and Doll of aiding and abetting, and fixed the punishment of Charles at 21 years' imprisonment and that of Doll at ten years.

The two defendants prosecute this joint appeal, but because of their different situations at the time of the homicide and of the difference in the evidence tending to show the guilt of one of manslaughter and of the other in aiding and abetting, it will be necessary to consider in this opinion their appeals separately.

On the appeal of Charles Lyons the evidence for the Commonwealth tends to show that decedent at the time he was shot in the back by appellant was leaning against one of the newly set posts and sighting at the other posts down the line to ascertain whether they were in line, while the evidence for the defendant tends to show that decedent rushed up the line of posts from where he was at work to intercept Charles on the ridge and was the aggressor, and that he received his death wound in the back while he was going away from appellant Charles with his back to him and shooting back at him over his shoulder. Obviously this was a question for the jury, for if they believed the evidence for the Commonwealth the verdict as to Charles was to say the least fully justified.

The only other ground of reversal for Charles is that the verbal dying statement of decedent testified to by one or more witnesses was incompetent because not

made under such conditions as authorized its admission in evidence. The facts are that the shooting occurred early in the afternoon, and that later in the afternoon decedent was taken on a train to Somerset, a few miles away, where there was a hospital; that he was operated on at the hospital and died there that night some ten or twelve hours after the shooting. The doctor who first saw him after the shooting and who accompanied him to Somerset testifies that when decedent was at his home, and that even after he reached the hospital, he expected to get well, and even after he came out from under the operation and revived decedent still thought he would get well; but that about 9:30 o'clock that night he gave up all hope of living and said he wanted to see his wife and baby before he died, and expressed his conviction that he was going to die. The doctor also testifies that after decedent came out from under the operation witness told him there was no chance for him, and that after these occurrences he made a statement to the doctor of how the difficulty occurred, which statement was in substance that decedent was somewhere along this line of posts and heard a shot fired, and when he walked down along the line of fence posts toward the end of the fence he met Charlie Lyons, who had a pistol in his hand; that decedent asked him what this shot meant and Charlie replied he was shooting at a dog, but said that decedent had done enough to him that he believed he would shoot him; that decedent then realizing Charles was going to shoot him turned to leave and as he turned Charles shot him in the back and started to run; that decedent then fell but turned and pulled his pistol and shot three or four shots at Charlie; that decedent then started home and Doll shot at him twice with a shotgun.

The admissibility of a dying declaration is not affected by expressions of belief upon the part of deceased made before the dying statement, or thereafter, to the effect that he expects to get well. The question always is what was the state of his mind at the time he makes the statement, for if he then believes he is facing impending death the theory of the law is that his statement is competent because in such a state of mind there is removed all incentive to tell anything less than the whole truth about the transaction. The fact that he has theretofore since his injury, or may thereafter, be of opinion that he is going to get well, does not change or

affect his state of mind if he at the time of making the statement believed death was impending.

It is, therefore, apparent that decedent's statement about the difficulty made at a time when he obviously believed he was going to shortly die, and when he had been so informed by his doctor, is not affected by any previous or subsequent expressions of belief by him that he might recover. Wells v. Com., 209 Ky. 208.

On the appeal of Charles Lyons there is no complaint of the instructions, and as the evidence fully justified the submission to the jury, and the dying statement was properly admitted, there was no prejudical error as to him.

As to Doll Lyons all the evidence shows that at the time he fired the shotgun the decedent had already received his death wound from the pistol of Charles. The evidence, however, as stated above is conflicting upon the point whether when Doll fired the shooting between the decedent and his brother had ceased and they had separated, going in different directions, or whether at the time firing between them was still going on. Obviously if Doll did not fire or otherwise participate in the difficulty until after the difficulty between the other two had ceased, and they had separated and were no longer combatants, then Doll did not aid and abet the commission of a crime which had theretofore been committeed by his brother. To constitute one an aider or abettor it is necessary that he should aid *either at the time of or before the commission of the offense by the other,* or been guilty of some overt act or some act of encouragement to such other. He cannot become an aider and abettor by injecting himself into the situation after the crime has been committed by another and after the combat between the other two is at an end; and if he does so and is himself guilty of any infraction of the law thereafter, he is punishable for such infraction, but not because he has aided and abetted the other in the commission of a crime already committed.

Under the facts in evidence, therefore, the court should have required the jury to believe before finding Doll guilty of being an aider and abettor that he should have fired the two shots at a time when the difficulty was in progress between his brother and decedent. And should have been further told that if Doll only fired after the difficulty between the other two was over and then fired

his shotgun at the decedent, from which shot he did not die, they should not find him guilty of aiding and abetting in the homicide but find him guilty of the felony of shooting at and wounding another with intent to kill under the provisions of section 1166 of the Ky. Stats.; and should also have instructed them under the provisions of section 1242, Ky. Stats., for shooting and wounding another in sudden heat and passion without previous malice, which is only a misdemeanor. That the two offenses last above referred to are included in a charge of murder and should be instructed upon when the evidence authorizes it, is clearly and accurately shown in the case of Housman v. Com., 128 Ky. 818.

There is no just complaint of the instructions actually given by the court in this case; but under the conflicting evidence as to the time when appellant Doll Lyons joined in the shooting we think the court erred to his prejudice in not instructing under the two sections of the statutes above referred to and upon the two lesser offenses therein described.

The judgment as to Charles Lyons is affirmed; but because of the failure of the court to instruct as indicated, the judgment as to Doll Lyons is reversed, with directions to grant him a new trial, and for further proceedings consistent with this opinion.

Whole court sitting.