# No. 16,903.

## SHREEVES *v.* THE PEOPLE.
(249 P. [2d] 1020)

Decided October 27, 1952.

Messrs. COIT & GRAHAM, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. NORMAN H. COMSTOCK, Assistant, for the people.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

DALE SHREEVES, plaintiff in error here, was charged in a two-count information with an assault with intent to commit murder and assault with a deadly weapon with intent to commit upon the person of another a bodily injury; both counts being under the provisions of section 67, chapter 48, '35 C.S.A.

Upon trial before a jury defendant was found not guilty of an assault with intent to murder and found guilty of the second count of the information. He was sentenced to a term in the county jail and fined. He is here by writ of error seeking a reversal of the judgment.

The only evidence introduced at the trial may be thus summarized: Defendant and his wife and Louis Richard Morrisette, defendant's brother-in-law, were celebrating

New Year's Eve in a tavern in Grand Junction and were imbibing freely of intoxicating liquors. Morrisette had planned to leave that evening for Denver, but, upon his plans being changed, it was suggested that his wife be called at her home and brought to the tavern to join the party. Morrisette's wife, upon joining the party, was plied with liquor so as to "catch up" with the rest of them. Some time after midnight it was discovered that defendant had left the tavern. His wife suggested that she and the Morrisettes drive to the home of Mrs. C, who, while her husband was in the army, lived with her two minor children some distance from the tavern.

Defendant reached Mrs. C's home shortly before 2 A.M. He aroused Mrs. C and gave her some toys which he had brought for her two children. After Mrs. C had made herself presentable, he entered the home and made some inquiry about a business proposition in which he was attempting to assist her. He had in his possession a "pistol" which Mrs. C suggested that he place upon the buffet, and with this suggestion he complied.

Shortly thereafter defendant's wife and the Morrisettes arrived at Mrs. C's home. Defendant's wife alighted from the car and approached Mrs. C's house; she tore off a screen door, broke the glass in the kitchen door, and entered the house where she found defendant and Mrs. C in the lighted kitchen. She was hysterical, boisterous, drunk and weeping, and, in breaking the glass in the door, she had cut her arm. Defendant and Mrs. C tried to stem the flow of blood. Defendant inquired of his wife who had brought her out there, and her answer was "Some friends." Defendant then left the house and went out to the automobile in which Morrisette and his wife had been seated. Morrisette was standing outside the car lighting a cigarette. The night was very dark, but he saw defendant approach with his hands in the air exclaiming, "Troubles, troubles, troubles—that's all I have," and asked Morrisette, "Red, what did you bring

them out here for?" Morrisette made no reply but stated, "You make your own trouble."

At the time of this episode between Morrisette and defendant, defendant was on the left hand side of the car, at a distance of about fifteen feet from Morrisette. Morrisette got back into his automobile, and, as he was doing so, he found his wife leaving the car on her side thereof. He made an unsuccessful attempt to prevent her from doing so. Almost immediately after Mrs. Morrisette left the car she fell and said that she had been shot, to which Morrisette answered, "No, I don't think you are shot, you are drunk." Upon reaching his wife he found that she was bleeding. Defendant, with the assistance of Morrisette, carried her into Mrs. C's home, and shortly thereafter she was removed by ambulance to a hospital in Grand Junction. A bullet had entered the back of her neck.

Mrs. Morrisette testified that she didn't see defendant; heard no conversation between him and her husband, and didn't hear any shot fired. Her husband testified that although defendant was within fifteen or twenty feet of the automobile in which he and his wife sat, he didn't see or hear any shot fired, and he didn't see any "pistol" in defendant's possession at any time.

The physician who attended Mrs. Morrisette at the hospital removed some pieces of a bullet from her neck, and the remainder thereof was removed by another physician in Denver.

Mrs. Morrisette and Mrs. C both testified that defendant did not display any anger and was quiet in his manner and friendly in his attitude. Mr. and Mrs. Morrisette testified that friendly relations existed between them and the defendant at all times before and subsequent to the offense charged, and that he had been helpful to them in many ways.

A neighbor of Mrs. C's, after Mrs. Morrisette had been removed to Mrs. C's home, saw defendant with his wife at their automobile, which had been parked first in front

and then removed by defendant to the back of Mrs. C's home, at which time he testified defendant stated, "It's an automatic that goes off easy." Whereupon the witness asked defendant if he had a gun, and defendant replied "No." This witness testified that he saw a holster in defendant's automobile but did not go over to investigate it. No "pistol" was produced at the trial, and the only evidence of plaintiff's possession of any such "pistol" was that of Mrs. C, who testified that it was on the buffet, and there is no evidence whatever that it was ever removed therefrom.

A deputy sheriff testified that he made an investigation of defendant's car and found a holster therein holding .22 shells "which are handled in a .22 automatic," and that the holster and belt were in the glove compartment of defendant's automobile. Mrs. C testified that on prior occasions she had seen a "pistol" in defendant's automobile.

At the conclusion of the People's case, defendant interposed a motion for a directed verdict, and during the argument thereon the district attorney stated with reference to intent, "We believe the circumstances are certainly enough to show the question of intent. This testimony is to the effect that Mrs. Shreeves came into the house. Her husband immediately asked who brought her out there, then she said, 'Friends,' and he immediately went out, and shortly thereafter a shot was fired. Now, the fact is undisputed that this lady was shot, the fact is undisputed so far that the defendant had a gun. He was the only one, so far as the testimony has shown, who was around there who had a gun. Under the circumstances and the sordid situation which existed *contrary to the testimony of the People's witnesses* in part, we believe there is certainly grounds there for any reasonable person to come in or infer that the defendant was in a mad rage as a result of his wife's interference in what he considered his private affairs." (Italics ours.)

The motion for a directed verdict was denied, whereupon the defendant also rested.

There are three assignments of error presented here. Our study of the record and consideration of the briefs persuades us that the only assignment necessary for consideration is the one which challenged the sufficiency of the evidence to justify a conviction.

We call attention to the statute applicable to the crime with which we are here concerned. " * * * An assault with a deadly weapon, * * * with an intent to commit upon the person of another bodily injury where no considerable provocation appears or where the circumstances of the assault show an abandoned and malignant heart, shall be adjudged to be a high misdemeanor, * * *."

Summarizing the evidence, it is undisputed that defendant, when he arrived at Mrs. C's house, had a "pistol" in his possession, and at Mrs. C's suggestion, put it on the buffet, where, so far as the evidence here discloses, it still remains. There is not a scintilla of evidence that when defendant left Mrs. C and his wife in the livingroom and passed through the kitchen that he took the "pistol" with him. It is undisputed that when he spoke to Morrisette, with his hands in the air, he did not have a gun in his hands, and no one testified that he had one in his possession at any time after Mrs. Morrisette arrived on the scene. Except for Mrs. C, who thought she heard a shot, neither Mr. Morrisette nor his wife saw the flash of a gun on a very dark night, allegedly fired within about fifteen feet of them, and neither heard a report. All the witnesses agree that defendant was not angry; made no threats, and his attitude was one of contrition; all witnesses testify that the most cordial and friendly relations existed between defendant and his wife and Morrisette and his wife, and that this friendly relation continued both prior and subsequent to the act which led to this criminal prosecution. Evidence was introduced as to a holster and cartridge belt with .22

shells therein, but there is no evidence as to the caliber of the gun from which the bullet was fired, nor as to the size of the bullet which entered Mrs. Morrisette's neck. After the shooting and upon inquiry of the defendant, the undisputed evidence is that he then stated that he had no gun.

In *People v. Hopper*, 69 Colo. 124, 169 Pac. 152, we find the only decision of our court construing the portion of the section 67, supra, applicable here, and it is specifically held that in order to find one guilty of its violation it is incumbent upon the People to prove beyond a reasonable doubt that the defendant violated the statute with a *specific intent* so to do. Here there is no *specific intent* shown, direct or circumstantially, and, in fact, all of the People's evidence negates a *specific intent*. It may be that the People had reluctant witnesses; those desiring to see defendant acquitted and perhaps willing to assist him in that result. If the witnesses for the People were untruthful and therefore not entitled to belief, their untruthfulness cannot establish the truth.

Specific, as applied to intent to do great bodily harm, and which must be found as a fact before a conviction, is an adjective which distinguishes the intent to do great bodily harm from other intentions in the defendant's mind at the time of the commission of the crime, and to require that intention to be in actual existence in defendant's mind at the time of the commission of the alleged crime.

"Where a crime consists of an act combined with a specific intent, the intent is just as much an element of the crime as is the act. In such cases, mere general malice or criminal intent is insufficient, and the requisite specific intent must be shown as a matter of fact, either by direct or circumstantial evidence. The rule is especially applicable where a statutory offense, consisting of an act and a specific intent, constitutes substantially an attempt to commit some higher offense than that which accused succeeded in accomplishing.

The general rule, * * * that a criminal intention will be presumed from the commission of the unlawful act does not apply; and proof of the commission of the act does not warrant the presumption that accused had the requisite specific intent. * * * " 22 C.J.S., p. 91, §32.

In *Moore v. People,* 124 Colo. 197, 235 P. (2d) 798, where defendant was charged with a violation of section 313, chapter 48, '35 C.S.A., it was said: " * * * The general rule that criminal intent will be presumed from commission of the unlawful act, does not apply under the statute, because the crime consists of the act combined with a specific intent, and proof of the commission of the act does not warrant any presumption that defendant had specific intent to defraud. * * * "

There is little authority to be found on the question of specific intent; nevertheless there seems to be no good reason for denying that one may be guilty of an assault with intent to do great bodily harm if one intentionally and purposely does an act that is so wanton and grossly negligent in character as to expose another to personal injury, and, in fact, personal injury results therefrom.

It should be noted that in the crime charged it is alleged that the assault occurred "where no considerable provocation appears or where the circumstances of the assault show an abandoned and malignant heart, * * * ." The term "abandoned and malignant heart" as the same is used in the statute here under consideration, is evidenced by the use of some instrumentality likely to produce great bodily harm, and by the brutal and unrestrained use of such instrumentality in the commission of the crime charged.

Under the evidence here the People failed wholly to establish by any evidence, circumstantially or otherwise, that defendant made an assault on LaVerne Morrisette with specific intent to commit a bodily injury upon her person, and, in fact, the district attorney, in arguing the question of intent as hereinbefore noted, realized that

his evidence was woefully weak in that regard. The evidence here was, as a matter of law, insufficient to support the charge in the information, and it, therefore, became the trial court's duty to grant defendant's motion for a directed verdict, and its failure so to do was error.

The judgment is reversed and the cause remanded with instructions to dismiss the information and discharge defendant.