Duane O. **HALLBACK**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 28.

Supreme Court of Alaska.

April 21, 1961.

James E. Fisher, Anchorage, for appellant.

George N. Hayes and Dorothy Awes Haaland, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

The appellant, Duane O. Hallback, was tried and convicted, together with one Richard L. Cook, of the crime of cutting Leonard Dunham, Jr., about the face, with intent to wound,[1] and Hallback appeals, charging as a principal error the refusal of the trial court to grant his motion for a directed verdict[2] because of the failure of the prosecution to prove any specific intent on his part.

It is apparent from the statement of the facts of the case as recited by both parties in their briefs that the appellant was actually charged and tried as an aider and abettor of Cook in the commission of the act constituting the crime.

There is no question that an aider and abettor is triable in this state as a principal for the crime charged. It is the law in Alaska, as in many other jurisdic-

1. The indictment charged:
   "That on or about the 9th day of July, 1959, * * * on Fourth Avenue, Anchorage, Alaska, Richard L. Cook and Duane O. Hallback did maliciously, wilfully and unlawfully cut Leonard Dunham, Jr. about the face with a broken beer bottle, said cutting being with intent to wound the said Leonard Dunham, Jr."

2. Under Rule 29 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. [which was applicable to criminal cases in the District Court for the District (Territory) of Alaska during all phases of the trial of the instant case] appellant's motion should have been one for judgment of acquittal. However, the prosecution concedes that the change-over is purely one of nomenclature, citing 4 Barron, Federal Practice and Procedure § 2221 (1951).

tions, "that all persons concerned in the commission of a crime, whether it be [a] felony or [a] misdemeanor, and whether they directly commit the act constituting the crime or aid and abet in its commission, though not present, are principals, and to be tried and punished as such."[3] We consider the words "aid" and "abet" as used in our statute to refer to conduct calculated to incite, encourage or assist in the perpetration of a crime. That is also the meaning which has been given to them generally by other courts.[4]

■ The basic question, then, for this court to decide is whether the evidence warrants the verdict that the appellant, as an aider and abettor, wilfully cut Leonard Dunham, Jr., about the face with a broken beer bottle, with intent to wound the latter. Viewed most favorably in support of the verdict and judgment, the record discloses the following factual situation surrounding the prosecution.

On the night of July 9, 1959, at approximately 11:30 o'clock, while it was still fairly light out, appellant, who was then 18 years of age, was driving his 1950 Oldsmobile car in the business section of Anchorage, along Fourth Avenue, a main street. Two other persons were with him in the car, both sitting in the front seat with him, Buzzi Jensen in the middle and Richard L. Cook, age 17, on the outside. Appellant was proceeding east along Fourth Avenue, when he came up behind a Pontiac car, which was being driven by the victim. Also in the front seat of the Pontiac were the victim's wife and Mrs. Stables, owner of the Pontiac. The appellant could not pass because the Pontiac was straddling the two east bound lanes and because of oncoming traffic in the west bound lanes; so he honked his horn at the victim and shouted at him to move over. The victim responded by pulling into the first available parking spot on the right. At this point Hallback drove

his Oldsmobile around and alongside the Pontiac. The Oldsmobile stopped momentarily or rolled slowly by. In either event, just as the right front door of the Oldsmobile was about even with the left front fender of the Pontiac, Cook leaped out of the Oldsmobile and began his attack.

Just prior to their cruise down Fourth Avenue, the appellant and his passengers had bought and consumed some beer out of bottles. It appears that Cook had one of these empty bottles in his hand when he leaped out of the Oldsmobile. He testified that as the Oldsmobile came alongside the Pontiac, the victim started opening his car door and "yelled 'Fall out.'" Cook accepted the challenge and claims that he broke the bottle on the floor board of Hallback's car for he saw a knife in the victim's hand. It should be noted that the victim Dunham was 33 years of age and that he was crippled in his left leg and foot. He denied having or using a knife. He also denied saying anything to Cook or Hallback before the attack.

The attack upon Dunham was a brutal affair in which the assailant kicked the victim, jabbed the broken beer bottle into his face, causing profuse bleeding, and also cut him across the middle finger of his left hand. Eye witnesses testified that Cook broke the beer bottle once on the Oldsmobile and again on the door by the driver's seat of the Pontiac. Cook concluded his attack in a matter of seconds and then dashed after the Oldsmobile which had rolled on down the street about 30 or 40 feet. After Cook got back into the Oldsmobile, Hallback drove it rapidly away, turning right at the first intersection beyond the scene of the attack and then proceeded to the nearby community of Spenard. There Hallback left the car with Buzzi Jensen and had friends take him and Cook home. It was not until 4 days later that Cook and Hallback were identified and

3. Section 65-3-2, A.C.L.A.1949. See also § 66-9-23, A.C.L.A.1949.

4. State v. Roberts, 1959, 85 Ariz. 252, 336 P.2d 151; Lyons v. Commonwealth, 1926, 216 Ky. 202, 287 S.W. 534, 536; State v. Hoffman, 1930, 199 N.C. 328, 154 S.E. 314, 316; United States v. Anthony, D.C.M.D.Pa.1956, 145 F.Supp. 323, 337, 338.

questioned by police officers and placed under arrest. They both talked freely with the officers concerning the encounter between Cook and Dunham.

Appellant Hallback testified in his own behalf and under gruelling cross-examination never waivered from his story that as he drove up alongside the Pontiac and heard Dunham holler "Fall out," he "hit the brakes" but did not come to a complete stop—just kept rolling. He was mad and his first impulse was to get out, but he changed his mind and continued down the street, because he did not want to get into any trouble. He intended to drive off, but he noticed that his car door on Cook's side was open and that Cook was gone. When he was about 6 feet past the Pontiac he heard glass break, though he could not tell whether it was on his car or away from it. Then, after he had driven about 30 or 40 feet, he looked back and saw Cook in the Pontiac "fighting this guy." As Hallback turned the last time to look back, he thinks he hit the horn (by accident, evidently). At this time Cook came running and got back into the car. Hallback insisted that when he prepared to drive away from the scene of the attack and leave Cook, his passenger, Buzzi Jensen, said "Wait Duane, you can't leave him." The record does not indicate that Buzzi Jensen testified at the trial though he was under subpoena at the time and available.

It is the opinion of this Court that the evidence, as set forth in the record of this case fails to establish that the appellant, with guilty knowledge, aided and abetted Richard Cook to cut Leonard Dunham, with the specific intent of wounding the victim.

His mere presence at the scene of the crime was not sufficient to make the appellant a participant. Nor was he necessarily guilty because he did not attempt to prevent the crime. Of course, those factors might have been circumstances for the jury to consider with other incriminating evidence, if there had been any, in passing on his guilt or innocence.[5] Actually, all the evidence was to the effect that the appellant was moving away from the scene of the crime at the time of its commission, for the reason, as he put it, that he "just didn't want to get in any trouble."

Section 65–4–15 A.C.L.A.1949, upon which the indictment against Hallback was based, provides

"That whoever maliciously shoots, stabs, cuts, or shoots at another, with intent to kill, wound, or maim such person shall be imprisoned in the penitentiary * * *."

The verdict of guilty as to Hallback under this statute required proof with reasonable certainty that he himself entertained the specific intent described in the statute or that as an aider and abettor of Cook he knew that Cook was actuated by such intent.[6]

■ The state concedes that intent is an element of the crime and contends that there was sufficient circumstantial evidence from which the intent could be inferred. We do not think so. It is true that evidence of intent must often be circumstantial;[7] but a specific intent such as is described in the statute here under consideration is an essential element of the offense and must be proved beyond a reasonable doubt.[8]

5. People v. Villa, 1957, 156 Cal.App.2d 128, 318 P.2d 828, 833.

6. Lyons v. State, 1892, 30 Tex.App. 642, 18 S.W. 416; Annotation 1922, 16 A.L.R. 1045.

7. Elwert v. United States, 9 Cir., 1946, 231 F.2d 928, 935.

8. State v. Potello, 1913, 42 Utah 396, 132 P. 14; People v. Hopper, 1917, 69 Colo. 124, 169 P. 152; Shreeves v. People,

1952, 126 Colo. 413, 249 P.2d 1020. In the Shreeves case, involving a prosecution for assault with a deadly weapon with intent to commit upon the person of another great bodily harm, the Supreme Court of Colorado declared:

"Specific, as applied to intent to do great bodily harm, and which must be found as a fact before a conviction, is an adjective which distinguishes the intent to do great bodily harm from other intentions in the defendant's mind at the time of the commission of the crime, and

Here there was produced neither direct nor circumstantial evidence showing an intent on the part of Hallback, as an aider and abettor, to cut Dunham about the face with a broken beer bottle, or to so cut him with the specific intent of wounding him.

The proof does not show that Hallback knew that Cook intended to cut Dunham with the specific intent of wounding him. Does it even show that he saw Cook *cutting* Dunham with the broken bottle? We could find no evidence of such a fact. The only testimony on that point in the record is Hallback's own statement that, after he had driven past the Pontiac about 30 or 40 feet, he looked back and saw Cook "in the car fighting this guy." Assuming, for the sake of argument, that he did see Cook in the act of cutting Dunham, was there any evidence that he knew the dastardly intent Cook had in mind when he assailed Dunham, or that he knowingly incited, encouraged or aided Cook in the malicious cutting with intent to wound? There is none.

Counsel for the state argue in their brief that the necessary intent on the part of Hallback can be inferred from his behavior as driver of the Oldsmobile before the actual cutting, including his honking and yelling at Dunham and then forcing the latter's car to the curb, from the fact that he waited at the scene until Cook was ready to leave and then left hurriedly, and also from the fact that he left his car at someone else's home and failed to report the crime. We cannot subscribe to such argument.

to require that intention to be in actual existence in defendant's mind at the time of the commission of the alleged crime." 249 P.2d at page 1023.

Although the prosecution produced six witnesses who testified that they saw and heard what occurred in Cook's attack upon Dunham, not one of them stated that Hallback ever uttered any words of incitement, encouragement, or offer of aid to Cook on that fateful night of July 9. The honking and yelling by Hallback might have indicated anger towards Dunham, but not a specific intent to wound him with a broken beer bottle. As for being forced to the curb by Hallback's car, Dunham and his two passengers all testified that Dunham voluntarily drove into the first available parking space along the curb to let the Hallback car pass. The fact that Hallback slowly "rolled" on past the scene of the attack may have provided some evidence that he was lingering to assist Cook to flee, but it was certainly not proof under the circumstances of this case of the specific intent required to sustain a conviction of the crime charged.

If Hallback had joined Cook by getting out of the car and advancing toward Dunham, or if he had only stopped the car to permit Cook to get out and then stood by to aid Cook, if necessary, or if he had spoken words of inducement or encouragement to Cook to attack Dunham, then there might have been some basis for the jury's verdict, but in the evidence produced at the trial there was none. Regardless of what other crimes the appellant may have committed in his activities on the night in question, there is no proof that he committed the crime of which he was convicted.

The judgment as to the appellant Duane O. Hallback is reversed.[9]

9. There were eleven additional errors assigned by the appellant, none of which we deem it necessary to consider here in the light of our decision on this appeal.